MARTORELL ET AL., PLAINTIFFS AND APPELLANTS, *v.* J. OCHOA & BROTHER ET AL., DEFENDANTS AND APPELLEES.

## APPEAL from the District Court of San Juan, Section 1, in an Action of Nullity and Ejectment. •

### No. 1499.—Decided July 27, 1918.

EJECTMENT — SALE OF PROPERTY — PROPERTY OF MINORS — AUTHORIZATION OF COURT—JURISDICTION.—According to articles 54 and 74 of the former Law of Civil Procedure, the parties could apply for authorization to sell the property of minors to any court having jurisdiction of the matter, and as such jurisdiction was undoubtedly vested in the courts of first instance, the court applied to could not refuse to take jurisdiction of the case by holding that it had no jurisdiction by reason of the subject-matter.

ID.—ID.—ID.—ID.—ID.—CONSTRUCTION OF LAW.—Although article 164 of the Spanish Civil Code requires authorization of the court for the sale of property belonging to minors and also invests the court of the domicile with jurisdiction to grant such authorization, that does not prevent the parties from applying, under article 56 of the Spanish Law of Civil Procedure, to any court of ordinary jurisdiction for such authorization, inasmuch as the provision of article 1976 of the said Civil Code only repeals the common law in all' matters which are treated of in the code and not in matters foreign thereto, such as those of procedure.

ID. — CONSTRUCTION OF LAW — REPEAL. — Articles 56 and 58 of the former Law of Civil Procedure, referring to jurisdiction and submission of the parties, were not repealed by article 164 of the Spanish Civil Code in the specific matter to which the said article refers, but remained in force as supplementary thereto. They can be harmonized and there is no real conflict between them.

ID.—ID.—LAW OF THE CASE.—The court may repudiate a decision previously rendered in the same case, for the traditional law of the case can never justify a deliberate sacrifice of the essential principles of justice or prevent the correction of an error which has been committed.

The facts are stated in the opinion.

*Messrs. José* and *Manuel Tous Soto* for the appellants.

*Messrs. Bosch & Soto* for the appellees.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is an appeal by the plaintiffs from a judgment rendered·

in the above-entitled cause by the District Court of San Juan, Section 1, on December 22, 1915, dismissing the complaint without special imposition of costs.

The said amended complaint, the original being dated June 5, 1914, prays for judgment setting aside the conveyance in payment of a debt of certain properties described in the complaint under Nos. 1, 2, 3, 4, 5, 6 and 7, in so far as it included the joint interests of the plaintiffs in said properties, and adjudging that each of the plaintiffs owns in each of the said properties a joint interest of two-eighteenths in fee simple, and a further joint interest of one-eighth in a joint interest of two-eighteenths in naked ownership, ordering that the defendant firm recognize the said joint interests and restore them to the plaintiffs together with the rents and profits received and receivable, of which they should render an itemized and verified account within a fixed time, with the costs, disbursements and attorney fees imposed upon the defendants.

The lower court made the following findings of fact:

(*a*) Each one of the plaintiffs owns in each of the properties described in the complaint a joint interest of one-ninth of one-half, or two-eighteenths of the whole, in fee simple, and another joint interest of one-eighth of two-eighteenths in naked ownership.

(*b*) By a deed of March 18, 1904, Rosa Torrens, as representative of the then minor plaintiffs, sold to J. Ochoa & Brother the joint interests in the said properties, which, as the heirs of their father, Pedro Martorell, the said minors owned in fee simple.

(*c*) Rosa Torrens made the said sale with the authorization of the District Court of San Juan given in its order of April 28, 1902, at which time as well as at the time of the execution of the deed she and her minor children under her *patria potestas* resided and had their domicile in the municipality of Ciales.

(*d*) The defendant firm is now in the possession of the properties described in the complaint and has been in such

possession since the deed of sale was executed, receiving the rents and profits of the same.

(e) The firm of J. Ochoa & Brother had correspondence with Rosa Torrens and with the Succession of Pedro Martorell, addressing their letters to the town of Ciales, their residence, and knew that Ciales was the fixed residence of Rosa Torrens and of her children when the court granted the authorization.

The defendants alleged as special defense that the action was barred by limitation according to section 1835 of the Revised Civil Code, and by its judgment of December 22, 1915, the court dismissed the complaint on that ground.

After hearing and considering the appeal this court, by its decision of July 28, 1917, affirmed the judgment appealed from, whereupon the plaintiffs filed a motion for reconsideration, which was granted. The case was again submitted to us for review on briefs and argument of the attorneys for the appellants and of Attorney A. F. Castro as *amicus curiæ*, and on the argument of the attorney for the appellees.

The principal question of law to be considered is whether or not there was a colorable title for prescription; that is, whether prescription could be based on the deed of sale of March 18, 1904, by which Rosa Torrens, representing her then minor children in the exercise of her *patria potestas* and acting as she did under the authorization of April 28, 1902, of the District Court of San Juan, which was not the court of the district in which the minors resided, sold the property in question to the firm of J. Ochoa & Brother.

The order of authorization reads as follows:

"Whereas Rosa Torrens y Risech has petitioned for authorization to sell the undivided interests which her minor children Teresa, Antonio, Luis, Miguel and Gerardo Martorell y Torrens, who are subject to her *patria potestas,* have in the following rural properties (the properties described in the complaint)'; whereas the necessity and utility of the said sale, as regards the minors aforesaid, have been shown by the three witnesses of good repute, whom the secre-

tary certifies he knows, after citing the Government's attorney, who is of the opinion that the authorization asked for should be granted. Therefore in view of the provisions of article 164 of the Civil Code and articles 2010 *et seq.* and 2029 of the Law of Civil Procedure, Rosa Torrens y Risech, for and in behalf of her aforesaid minor children, is authorized to sell the interests which they have in the said properties. The justices of the court so decided and sign, to which I certify.—Juan B. Ramos. Juan Morera Martínez. José R. F. Savage. Before me, Ramón Falcón.''

In order to determine the legal efficacy of the said authorization it is necessary to ascertain first what applicable statutes were in force in Porto Rico when on April 28, 1902, the authorization, which is claimed by the plaintiffs to be null and void, was given to Rosa Torrens.

The Law of Civil Procedure was in force in Porto Rico at that time, it having gone into effect on January 1, 1886, by virtue of a Royal Order dated September 25 of the preceding year, as well as the Civil Code which took effect January 1, 1890, by virtue of a Royal Decree of July 31, 1889.

As is seen, the Law of Civil Procedure went into effect prior to the Civil Code.

According to the said Law of Civil Procedure, the rules of jurisdiction applicable to the case are to be found in articles 56, 58 and 63, the pertinent parts of which read as follows:

"Art. 56.—Any judge impliedly or expressly agreed upon by the litigants shall be competent to take cognizance of the suits arising from actions of all kinds.

"The submission, however, can only be made to a judge exercising ordinary jurisdiction and who is competent to take cognizance of questions similar to and of the same kind as the one submitted.

"Art. 58.—An implied submission is made:

"*First.* By the plaintiff, by the act of filing his complaint before the judge.

"*Second.* By the defendant when, after his appearance is entered in the action, he takes any further steps therein, except to formally object to the jurisdiction of the judge by declinature.

"Art. 63.—In order to determine competency, in cases other than

these mentioned in the foregoing articles, the following rules shall apply:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"23. In authorizations for the sale of property of minors or incapacitated persons, the competent judge shall be that of the place where the property may be situated, or that of the domicile of the persons to whom it belongs."

In commenting on said section 63 Manresa expresses himself as follows:

"Are these special rules of jurisdiction so absolute as to exclude the express or implied submission of the parties in all cases?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Doubt might arise in the application of the other rules because they refer to proceedings which, in the strict sense of the term, are not suits at the time of their commencement, such as attachments, unlawful detainer, redemptions, injunctions, and surveys, to which rules 12, 13, 14 and 15 refer, and *ex parte* proceedings, which are referred to in the other rules with the exception of No. 21, which we will examine separately. 'In regard to such proceedings,' said the Supreme Court in various decisions on jurisdiction after the enactment of the Organic Act of 1870 which established the said rules, and notwithstanding the same, which, according to the said court, it had followed in many judgments, 'the question of territorial jurisdiction has no place in an *ex parte* proceeding because in it jurisdiction is conferred by rule 1 of article 1208 of the Law of Civil Procedure of 1855 upon the judge before whom the proceeding is brought, and that question can be raised only when the proceeding loses its character of an *ex parte* proceeding and is converted into a contentious cause.' (Judgments of July 22 and September 30, 1875; October 6, 1866, and June 2, 1877.) This doctrine is based on the submission of the suitor by the mere act of presenting his petition to the judge, and although the new law does not re-enact the said rule, article 56 gives preferential jurisdiction in all kinds of actions to the judge to whom the interested parties may have submitted themselves. Hence we are of the opinion that the foregoing jurisprudence of the Supreme Court should be considered effective." Manresa y Navarro, Law of Civil Procedure, Vol. 1, pp. 217–218, Ed. 1910.

That the provision of article 56 of the Spanish Law of Civil Procedure establishes a general rule applicable as well

to cases of contentious actions as to *ex parte* proceedings is confirmed by articles 54 and 74 of the same law, which read as follows:

"Art. 54.—Civil jurisdiction may be vested in any judge or court which, by reason of the matter of the amount in litigation and of his or its rank in the judicial service, may be competent to take cognizance of the matter submitted to the same.

"Art. 74.—In no case shall questions of competency in civil matters be raised by the court on its own motion; but the judge who considers himself incompetent in the matter may abstain from taking cognizance thereof, after consulting with the department of public prosecution, admonishing the parties to submit their questions to the proper court."

In view of the provision of article 54, it is obvious that the parties have the right to apply to any judge or tribunal having jurisdiction of such matters for authorization to sell property belonging to minors, and at that time such jurisdiction was vested undoubtedly in the courts of first instance. And by the provision of article 74 the court to which such application was made could not refuse to take jurisdiction of the case because the matter was submitted to its jurisdiction.

"This provision" (article 74), says the same commentator, Manresa y Navarro, "is the natural consequence of what is prescribed by articles 54 and 56, according to which civil jurisdiction may be extended and the judge to whom the parties expressly or impliedly submit has preferential jurisdiction. Then the judges are obliged to take jurisdiction of the civil matters submitted to them by the litigants and cannot therefore excuse themselves and on their own motion raise any question of jurisdiction. * * * This rule is subject to one exception, which may be deduced from the articles cited if it is not expressly established by the article under consideration. Jurisdiction cannot be extended to a judge who has not jurisdiction by reason of the subject-matter, of the amount in litigation, or of the nature of the action, as prescribed by article 54. * * * In such cases the incompetency of the court is radical and absolute because it arises from a lack of jurisdiction, and as it is a rule of public policy that no judge or official shall exceed the limits of his authority, the article under consideration authorizes the judge to abstain from

taking jurisdiction of cases when they consider themselves incompetent by reason of the subject-matter, although the interested parties do not question their jurisdiction." Manresa y Navarro, Law of Civil Procedure, Vol. 1, pp. 240–241.

And it cannot be maintained that article 164 of the Spanish Civil Code, which is applicable to the case because it was in force when the Court of First Instance of San Juan granted to Rosa Torrens authorization to sell the real property of minor children, repealed the provisions of the Law of Civil Procedure then in force and which, according to the jurisprudence of the Supreme Court of Spain and of the General Directorate of Registries, affected both contentious actions and *ex parte* proceedings.

The said article reads as follows:

"Art. 164.—The father, or the mother in a proper case, cannot alienate the real property of the child, the usufruct or administration of which belongs to them, nor encumber the same, except for sufficient reasons of utility, and after authorization from the judge of the domicile, hearing the department of public prosecution, excepting the provisions which, with regard to the effects of transfers, the Mortgage Law establishes."

We are of the opinion that the section cited renders necessary the authorization of the court for the sale of property of minors and also gives jurisdiction to the judge of the domicile to grant such authorization, but that jurisdiction does not forbid that, in accordance with the provisions of article 56 of the Law of Civil Procedure, any judge of ordinary jurisdiction may be applied to for the authorization; for the final provision contained in article 1976 of the Civil Code provides only for the repeal of all legal compilations, uses and customs which constitute the common civil law in all matters which are the object of that code and not of matters foreign thereto such as those of an adjective or procedural character.

"Jurisdiction," says Manresa in his comments on article 164 of the Spanish Civil Code, "is a question which comes under the adjec-

tive law, and the final provision of the code repeals only the common civil law." Manresa, Civil Code, Vol. 2, p. 42, Ed. of 1903.

"The code is a substantive and civil law whose enactment can affect laws of the same kind only and not those of a different character; that is, adjective or procedural laws like the Law of Civil Procedure." Scaevola, Civil Code, Vol. 3, p. 311.

Therefore we understand that articles 56 and 58 of the Law of Civil Procedure were not repealed by article 164 of the Spanish Civil Code, but remained in force as supplementary thereto. There is no real conflict between the two and they can be harmonized in the manner indicated.

The doctrine laid down by the Supreme Court of Spain in its judgments of July 22 and September 30, 1875, October 6, 1876, and June 2, 1877, that the question of jurisdiction does not arise in an *ex parte* proceeding because the law confers jurisdiction on the judge to whom the petition is presented, was cited by the General Directorate of Registries of Spain in its decisions of January 22, 1886, May 9, 1889, and February 8, 1907, as well as by this court in deciding the administrative appeal of *Solá* v. *The Registrar of Property of Caguas* on March 25, 1905, (8 P. R. R. 205). In that decision, involving also an *ex parte* proceeding, we said:

"It is a general principle in matters of jurisdiction that a competent judge to take cognizance of suits to which the maintenance of actions of all kinds may give rise is the one to whom the litigants expressly or impliedly submit, provided that he has jurisdiction of matters of the same nature and in the same instance; and this principle, established in section 56 of the former Law of Civil Procedure, has been reproduced in sections 76 and 77 of the new Code of Civil Procedure.   *   *   *."

As authorization for the sale of property belonging to minors is granted in *ex parte* proceedings, the said doctrine likewise applies to such authorization.

We must point out also that, according to article 1814 of the old Law of Civil Procedure, in *ex parte* proceedings the public prosecutor shall be heard also when the petition affects

public interests and when it relates to a person or thing whose defense or protection appertains to the public authorities, the public prosecutor being required to prepare his report in writing, and that in order to decree a sale of the property of minors, one of the requirements of article 2011 was that the *fiscal* should be heard in the matter. The *fiscal* was heard in the proceeding brought by Rosa Torrens to obtain authorization for the sale and he not only made no objection but expressed his conformity therewith; and he did not move, as he could have done in the defense or protection of the minors, that the court deny the petition if it deemed the provisions of article 74 of the Code of Civil Procedure applicable to the case, in which event the decision would have been appealable to the territorial court.

In view of the questions involved, we think it advisable to transcribe the decision of the General Directorate of Registries of January 22, 1886, which is as follows:

"It is considered that in order to decide the other questions discussed in the present appeal it is necessary to ascertain whether the special rules of jurisdiction established in article 63 of the Law of Civil Procedure are so absolute as to exclude in all cases the express or implied submission of the parties.

"It is considered that the wording of said article 63 itself serves to solve that problem, for in providing that its rules shall apply in cases other than those mentioned in the preceding articles, it implies that the said rules are not applicable to the cases to which the preceding articles refer; and as one of these is article 56, which establishes the submission of the parties as a general principle in the matter of jurisdiction, it is evident that when there is such submission the special rule of jurisdiction cannot be invoked.

"It is considered that, although it can be objected that said article 56 refers to suits and *ex parte* proceedings, such as is that which originated the present appeal, are not of such character, that objection is overcome by the doctrine laid down by the Supreme Court in various judgments and particularly in those of July 22 and September 30, 1875, October 6, 1876, and June 2, 1877, holding that the question of jurisdiction has no place in an *ex parte* proceeding be-

cause the law gives jurisdiction to the court in which the proceeding is brought.

"It is considered that, although this jurisprudence was based on Rule 1 of article 1208 of the Law of Civil Procedure of 1855, which rule was not re-enacted in the new law, it must not be overlooked in the first place that when the Supreme Court established that jurisprudence the Organic Act of 1870 was already in force and it contained nearly all of the rules of jurisdiction which figure in article 63 of the present code; furthermore, that in giving preferred jurisdiction of actions of all kinds to the judge to whom the interested parties may have submitted, article 56 of the present code establishes a general rule applicable also to the acts now under consideration and leaves the jurisprudence of the Supreme Court in force; and, finally, that it is the opinion of commentators of recognized authority that the rules of article 63 of the Law of Civil Procedure are applicable only to cases in which all the parties to a proceeding do not submit to a court other than that to which the said article refers."

It is to be observed that Book First of the old Law of Civil Procedure, in which are found the rules of jurisdiction to which we have referred, is headed "Provisions Common to Contentious and Voluntary Jurisdiction," and that therefore the idea of the Spanish legislators was that the rules of jurisdiction should be applicable as well to one as to the other.

In the search which we have made we have not found a single case in which the question of the nullity of an authorization granted by a judge not of the domicile of the minor has been raised and decided by the Supreme Court; but the lack of specific jurisprudence on this point inclines us to think that that question has not been raised because it is the general and uniform belief, both in Spain and its possessions, that such authorization granted by any judge of ordinary jurisdiction is valid.

In the case under consideration neither the attorney who advised Rosa Torrens and drew up the petition for the authorization of the court to sell the property of her minor children, nor the three judges who heard the said petition, nor the *fiscal* who made a favorable report upon it, nor the notary

who drew up the deed of sale, nor the registrar who had to record the title of ownership, entertained the slightest doubt as to the validity of the proceeding; and, furthermore, the plaintiffs themselves have indifferently allowed the years between 1904 and 1914 to pass without asserting the right to which they believe themselves entitled and without giving any reasons which would justify their delay in the exercise of that right, as though they themselves were convinced of the validity of the authorization because it was granted by a court having jurisdiction.

It may be that the decision of the Supreme Court of the United States in the case of *Garzot* v. *Rubio,* 209 U. S. 303, and our decision in the case of *Esterás* v. *Arroyo,* 16 P. R. R. 689, have been instrumental in arousing them; but if the cases in which these decisions were rendered are examined carefully, it must be concluded that they are not applicable to the present case.

Under the theory which we have marked out we are of the opinion that the District Court of San Juan had ordinary jurisdiction to give Rosa Torrens the authorization to which the transcribed decision of April 28, 1902, refers, and that it also had territorial jurisdiction to grant the same because Rosa Torrens submitted to its jurisdiction, and therefore that the order of the said court was valid and effective in law, as was also the sale made by Rosa Torrens to the firm of J. Ochoa & Brother by the deed of March 18, 1904.

It is true that this present opinion is not in harmony with the opinion delivered in this case on July 23, 1915, (23 P. R. R. 28), in which we held that the demurrer to the complaint by the defendants on the ground that it did not constitute a cause of action, should be overruled because we considered that the authorization granted to Rosa Torrens by the order of April 28, 1902, was null and void; but the traditional law of the case can never justify a deliberate sacrifice of the essential principles of justice and prevent the correction of

the error committed.    That decision was not a final judgment. *Great Western Tel. Co.* v. *Burnham,* 162 U. S. 339.

"And we do not understand that the rule that when a decision is rendered it becomes the established law of the case is such a rule of steel that it can not be deflected in any manner.    Cases may arise in which it is clearly shown that the first decision was· erroneous; that if the said decision were followed it would not only prejudice the case before the court, but also other interests of the community. Hence we have no doubt of the power of the court to review and reverse a former decision in the same case." *Central Branch Union P. R. Co.* v. *Shoup Co.,* 28 Kansas, 394; 42 Am. Rep. 163.

"In the absence of statute, the phrase 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to open what has been decided—not a limit to their power." *Messenger* v. *Anderson,* 225 U. S. 436, and cases cited.

But even without receding from our decision of July 23, 1915, (23 P. R. R. 28), the judgment appealed from would be sustained on the ground that the action brought was barred by limitation, according to section 1858 of the said code, which the lower court considered applicable to the case and which the appellants cited as violated by the judgment of December 22, 1915.

The sections of the Civil Code which govern the question of prescription involved in the present case are 1841, 1851, 1853, 1854, 1855, and 1858, which read as follows:

"Sec. 1841.—For ordinary prescription of ownership and other property rights, it is necessary to possess things in good faith and under a proper title, during the time specified by law."

"Sec. 1851.—Good faith of the possessor consists in his belief that the person from whom he received the thing was the owner of the same, and could convey his title."

"Sec. 1853.—By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question.

"Sec. 1854.—The title for prescription must be true and valid.

"Sec. 1855.—A proper title must be proven; it never can be presumed."

"Sec. 1858.—Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title."

As is seen, section 1858 of the Civil Code requires that there must be good faith, color of title and possession for ten years as to persons present, in order to acquire by prescription ownership and other property rights in real property.

Section 1851 defines good faith as consisting in the belief that the person from whom the possessor received the thing was the owner of the same and could convey his title. Such belief is sufficient to establish good faith, and it is not necessary that the grantor should be the real and absolute owner thereof and could pass title of ownership. This definition of good faith is in harmony with that of sections 436 and 437, which are made applicable to prescription by the express provision of section 1852; and section 436 provides that a bona fide possessor is deemed to be the person who is not aware that there exists in his title, or in the manner of acquiring it, any flaw invalidating the same, and that a possessor in bad faith is deemed to be any person possessing in any contrary case. According to section 437, good faith is always presumed and any person averring bad faith on the part of a possessor is bound to prove the same. Therefore a person who believes that he acquired the property from one who was the owner of it and capable of transferring its ownership, or a person who is not aware that there exists in his title, or in the manner of acquiring it, any flaw invalidating the same, is a bona fide possessor. Consequently, good faith is compatible with a title invalidated by a defect, provided the possessor is not aware of the existence of such defect or believes that it does not exist.

As regards color of title, section 1853 expressly provides

that it is understood to be that which legally suffices to transfer the ownership or property right, the prescription of which is in question. In order that the title may be colorable, it is not necessary that it actually transfers! the ownership or property right, but that it is sufficient to transfer it although it may contain a defect which invalidates it. And this is necessarily so, because if under the name of color of title, which the law requires for prescription, is meant only a title clothed with all the internal and external requisites necessary for the real and actual transfer of ownership, prescription would be superfluous as a means of acquiring ownership.

" 'This is not only just but legal,' as said in the case of *Teillard* v. *Teillard et al.,* 18 P. R. R. 546, 'unless the provisions of the Civil Code, that after the lapse of ten years as to persons present and of twenty as to absentees dominion of real property possessed in good faith and by just title is acquired by prescription, should be rendered ineffective.'

"If possession transferred by virtue of a sale requires, even thus, thirty years to prescribe, such provisions of the Civil Code, as also the many decisions of this Supreme Court, the greater number of which are embodied in Volumes 3, 5 and 6 of our Reports and were rendered in dominion cases in accordance with the aforesaid provisions, would be useless."

And we then added, quoting from the judgment of the Supreme Court of Spain of October 25, 1881, that "if the void title cannot cease to be such, converting itself into a valid one, the laws based on reasons of public convenience have in some cases accorded to possession an irrevocable force, not on the strength of its original cause, but in view of the respect due to a status consecrated by the lapse of time."

That doctrine was ratified later in the cases of *Picart* v. *De León,* 22 P. R. R. 553; *Arroyo et al.* v. *Bruno et al.,* 23 P. R. R. 757, and *Maldonado* v. *Ramos et al.,* 24 P. R. R. 278.

In disposing of an appeal in which it was alleged that articles 1950, 1952 and 1953 of the Spanish Civil Code (secs. 1851, 1853 and 1854 of the Rev. Civ. Code) had been violated

by a ruling that a deed of sale of a concession by a widower who had acquired the same during wedlock was sufficient for acquisition by ordinary prescription, it being urged that said deed was null and insufficient to pass title by prescription, the Supreme Court of Spain, by its judgment of October 2, 1908, dismissed the appeal for the following reasons; "(1) Because the deed of July 16, 1891, is a good and perfect title on its face to transfer the ownership and contains the requirements of sections 1952 and 1953 of the Civil Code, it not being legally practicable to confound a defect which may affect a title for the purposes of prescription, such as the lack of any requirement which, according to its character, may defeat the title in an action, with a defect resulting from the nature of the acts performed and the capacity of the parties; (2) because good faith being always presumed and consisting in the *belief* that the person from whom the property was received was the owner and could transfer its ownership, according to article 1950, this condition cannot be denied the defendant companies because of the mere detail that the Count of Locatelli had executed the deed in which he stated that he was a widower, inasmuch as he appeared as the only grantee and as such has the character of owner, apart from the domestic inconveniences produced by the death of his wife six weeks before the execution of the deed, which might have passed unnoticed by those who took part in the organization of the partnership, and because in considering what constitutes mere belief sufficient to establish good faith it is not necessary to apply the strict principle of law as in a case where it is sought to determine the validity of the act * * * ." 112 Civ. Jur. 39.

Later, in a judgment of November 30, 1910, the same court held that "even supposing that a deed could not have transferred to the vendee the ownership of the property claimed because of the nullity of the title asserted by the vendor, if the said deed, besides containing in form the requirements of the law, constitutes by its nature a title conveying ownership,

it is manifest that it fulfils the conditions of articles 1952 and 1953 of the Civil Code (secs. 1853 and 1854 of the Rev. Civ. Code), as held by this court in similar cases; because, if it were required that the said deed should convey to the purchaser in fact and in law the ownership of the property, there would be no need for him to resort to prescription, and this mode of acquisition, in so far as regards ordinary prescription, would be superfluous and would have to be eliminated from the methods of acquiring title under our statute as unnecessary and useless.'' 119 Civ. Jur. 486.

In view of the statutes cited and of the jurisprudence established by this court in harmony with that of the Supreme Court of Spain, we arrive at the conclusion that a title capable of transferring ownership, although it does not convey it in fact and in law because of a fatal defect, may serve for the acquisition of ownership by ordinary prescription, provided the requirements of good faith and possession for the time prescribed by law are shown and such possession has been as owner, publicly, peacefully and uninterruptedly in accordance with article 184 of the Revised Civil Code.

The foregoing conclusion is not affected by the provision of section 1854 that the title for prescription must be true and valid. The antonym of ''true'' in its grammatical and legal signification is ''false.'' We cannot give to the word ''valid'' a meaning which would eliminate from our code the method of acquiring by ordinary prescription, as would be the case if we should understand a valid title to be one clothed with all the internal and external requirements of the law. According to the judgments of the Supreme Court of Spain of October 2, 1907, and November 30, 1910, a valid title is one which contains the elements necessary to give life to the title and to show its existence independently of the nature of the acts performed and of the capacity of the parties.

Applying the foregoing doctrine to the case before the court, the conclusion is inevitable that the defendant firm ac-

quired by ordinary prescription the joint interests which the plaintiffs seek to recover. The deed of March 18, 1904, by which Rosa Torrens, in the exercise of *patria potestas* over her minor children, the plaintiffs, sold the said joint interests to J. Ochoa & Brother with the authorization of the District Court of San Juan of April 28, 1902, is a good, true and valid title for the purposes of prescription—good, because it is one of purchase and sale sufficient to convey the ownership; true, because it has not been attacked as false; valid, because it is perfect in its external requirements and even in the internal conditions which affect its life and existence, according to section 1228 of the Civil Code; for there was a coincidence in the contract of a subject-matter consisting of the joint interests described in the complaint, the consent of J. Ochoa & Brother through their managing partner, Severo Ochoa, and by the minors through their legal representative, or their mother, Rosa Torrens, by virtue of her *patria potestas,* and a consideration contributed to by both parties; namely, the conveyance of the property and the payment of its price. The lack of authorization by a competent court affects the form but not the essence of the consent. It does not render it inexistent but void; hence the nullity of title, which, being void, gives rise to a suit in ejectment; but it is sufficient for the purposes of prescription. The possession by J. Ochoa & Brother has been in good faith, for this is always presumed. and the evidence does not show that they knew that their title or manner of acquiring it was affected by a fatal defect.

Considering all the circumstances of the case, the fact that J. Ochoa & Brother knew that Rosa Torrens and her children resided in Ciales, which is in the judicial district of Arecibo and not in that of San Juan, does not destroy the legal presumption that the said firm has been a bona fide possessor. And that the said possession was in the character of owner and public, peaceful and uninterrupted, as required by section 1842 of the Civil Code, and for more than ten years as to

persons present, is not a matter for discussion in the present appeal.

We have transcribed the decision of the District Court of San Juan of April 28, 1902, authorizing Rosa Torrens to sell the joint interests of her minor children in the real property.

Invested with the said authorization, the legal efficacy of which was not questioned by either Rosa Torrens or J. Ochoa & Brother, the former, representing the minors, by a deed of March 18, 1904, executed before Notary Herminio Díaz Navarro, sold the said joint interests to J. Ochoa & Brother.

The deed of sale was recorded in the Registry of Property of Arecibo.

In view of the foregoing facts, the learned attorney for the appellees pertinently propounded the following question:

"If the attorney who advised Rosa Torrens and prepared the petition believed that his action in presenting the same to the District Court of San Juan was correct and legal; if the district attorney expressed a favorable opinion; if the three judges who heard the said petition rendered a decision granting the same; if the notary public who drew up the deed of sale with the decision of the court before him made no objection; if the registrar upon recording the title of ownership found no defect invalidating the same, all of them being learned in the law and required by law to pass upon the validity or invalidity of an instrument, for what reason and by what right can it now be claimed that J. Ochoa & Brother are responsible for the defects or errors committed by a third person and completely beyond and independent of their will? If the jurisconsults failed to observe or note any defect in the authorization given Rosa Torrens, how can it be expected that J. Ochoa & Brother, laymen as regards juridical technicalities, should do so? J. Ochoa & Brother were not called upon to solve a legal problem of such a difficult nature as to require a searching analysis of the legal principles involved in the said authorization, as has been shown by the subsequent decision of this court which evidences a careful, arduous and complex study of the subject."

It is true that a court without jurisdiction can authorize no one to alienate property belonging to minors. But we are

of the opinion that taking into consideration the date—April 28, 1902—on which the District Court of San Juan authorized Rosa Torrens to dispose of the property, it cannot be held absolutely that said court had no jurisdiction to grant the authorization, notwithstanding the fact that not it but the District Court of Arecibo was the proper court to authorize the sale.

According to the laws of Spain, which govern the present case, *jurisdiction,* as defined by the distinguished commentator Manresa y Navarro in his Commentaries on the Spanish Code of Civil Procedure, is the authority with which the judges are invested to administer justice, and *competency* is the authority which they have to take cognizance of certain matters, either on account of the very nature of the thing involved or by reason of the persons. The former is the genus and the latter the species. Jurisdiction always emanates directly and immediately from the law. No one can exercise it unless the law has given him that authority. Only the persons who have been given such authority according to law have jurisdiction and can administer justice; but the competency of a judge to take cognizance of a matter, although derived also from the law, sometimes originates directly, immediately and exclusively from the law and at other times from the will of the parties, the former case is the general rule and the latter the exception. *Garcés Nazario* v. *Franceschi,* I D. P. R. 282; *Bayrón et al.* v. *García et al.,* 17 P. R. R. 512. If the authorization had been granted by this court or by one of the justices or by a municipal court or justice of the peace court or by any officer or private person not authorized to administer justice, the authorization would then have been void for lack of jurisdiction and might have been correctly considered inexistent. Its nullity does not arise from lack of ordinary jurisdiction, but from the lack of territorial jurisdiction in the court which granted the authorization. The two expressions have different meanings although they are frequently used synonymously.

The case of *Longpré* v. *Díaz,* 237 U. S. 512, is unlike the present in which authorization for the sale was granted by a district court and was presumed to be valid until its validity was submitted to the court by the complaint of June 5, 1914, at which time all the legal requirements for acquisition of ownership by ordinary prescription as to persons present had been complied with.

For the foregoing reasons we are of the opinion that, reconsidering our decision of July 23, 1915, we should affirm the judgment of the District Court of San Juan of December 22, 1915, and dismiss the complaint without special imposition of costs.

*Affirmed.*

Mr. Justice Aldrey concurred.

Justices del Toro and Hutchison concurred in the judgment, but without discussing the plea of prescription.

Mr. Justice Wolf dissented.